UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

J.D. BOWEN,

                            Plaintiff,                    DECISION AND ORDER

vs.

                                                         22-CV-6275 (CJS)

UNITED STATES OF AMERICA,

                            Defendant.

_____

## I. INTRODUCTION

Plaintiff J.D. Bowen filed the present action under 26 U.S.C. § 7433, alleging that two officers of the Internal Revenue Service (IRS), while engaged in the collection of federal taxes acting in the course of their employment, recklessly or intentionally disregarded provisions of Title 26 of the United States Code. Compl., June 15, 2022, ECF No. 1. The matter is presently before the Court on Defendant United States of America's ("government") motion to dismiss the action for lack of jurisdiction and for failure to state a claim, and Bowen's cross motion for leave to amend his complaint. Mot. to Dismiss, Aug. 27, 2022, ECF No. 8; Mot. to Amend, Oct. 31, 2022, ECF No. 15. For the reasons stated below, Bowen's motion for leave to amend [ECF No. 15] is granted, the government's motion to dismiss [ECF No. 8] is granted in part and denied in part, and the government is directed to answer Plaintiff's amended complaint within 21 days of the date of this order.

## II. PLAINTIFF'S MOTION FOR LEAVE TO AMEND

The lenient standard applied to motions for leave to amend in this Circuit is well settled:

> Pursuant to Fed.R.Civ.P. 15, a court should "freely" give leave to amend, "when justice so requires." However, a court may deny leave to amend for any number of "good reason[s], including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (citation omitted). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin v. Dickson*, No. 03-7917, 100 Fed. App'x 14, 16, 2004 WL 1205185 at *2 (2d Cir. Jun. 2, 2004) (unpublished, citation omitted).

*Dapson v. City of Rochester, New York*, No. 17-CV-6704 CJS, 2019 WL 591692, at *7 (W.D.N.Y. Feb. 12, 2019). The government maintains that Bowen's proposed amendment would be futile, and that the motion to amend should therefore be denied. Resp. in Opp., Nov. 9, 2022, ECF No. 17.

Where, as in this case, a district court has before it both a motion to dismiss and a cross-motion to amend, the court may "either deny a pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020). The Second Circuit has stated that the latter approach is "a sound approach that promotes judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient." *Id.* at 303–04.

Here, the government's opposition to Bowen's motion to amend incorporates by reference its memorandum and arguments in support of its motion to dismiss. Resp. in Opp. at 1. Therefore, the Court will disregard Bowen's original Complaint and evaluate the sufficiency of the proposed Amended Complaint under Rules 12(b)(1) and 12(b)(6) in light of all of the government's arguments in its motion to dismiss. *See Seals v. Marianetti-DesRosiers*, No. 521CV988BKSTWD, 2022 WL 3153942, at *2 (N.D.N.Y. Aug. 8, 2022) ("Since Defendants have had a full opportunity to respond to the proposed amendments

and the primary claims remain the same, the Court considers the merits of the motion to dismiss in light of the Proposed Second Amended Complaint. If the claims in the Proposed Second Amended Complaint cannot survive the motion to dismiss, then Plaintiff's cross-motion to amend will be denied as futile.").

For the reasons discussed below, the Court concludes that the Amended Complaint may proceed with respect to any claims for conduct which occurred during the limitations period beginning June 15, 2020, but that any claims based on conduct that occurred prior to June 15, 2020 are precluded.

## III. BACKGROUND

The following background is drawn from Bowen's proposed Amended Complaint, accepting as true the factual allegations and drawing all reasonable inferences in Bowen's favor. *Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018), *aff'd*, 141 S. Ct. 486 (2020).

Bowen, a United States citizen and resident of Monroe County, New York, owns his own business. Am. Compl. at ¶ 7–8. Between roughly September 2015 and October 2020, Scott Goetz, a Revenue Officer with the Internal Revenue Service ("IRS"), issued multiple levies against Bowen for amounts in excess of $1 million. Am. Compl. at ¶ 15. Officer Goetz also sent Bowen notices of payment obligations containing false, incorrect, and inaccurate information. Am. Compl. at ¶ 16. As a result of Officer Goetz's conduct, Bowen decided to forego certain challenges to the amounts the IRS claimed he owed, or take other action to dispute the amount claimed to be due. Am. Compl. at ¶ 17.

In addition, between September 2015 and November 2020, Officer Goetz and his supervisor, Revenue Officer Natalie Considine, denied seven separate requests by

Bowen for an installment payment plan agreement "while simultaneously commencing collection activity in the form of bank account levies and accounts receivable levies . . . ." Am. Compl. at ¶ 18.

On October 21, 2015, Officer Goetz sent Bowen a "compiled list of all tax amounts due," which included the expiration dates of collection statutes. Am. Compl. at ¶ 19. A document dated May 15, 2018 indicates the expiration dates from the October 2015 communication were incorrect or "false." Am. Compl. at ¶ 20. As a result of the incorrect information in the October 2015 communication, Bowen declined to exercise certain taxpayer rights. Am. Compl. at ¶ 21.

On December 12, 2018, Officer Goetz informed the IRS's "offer-in-compromise" ("OIC") group that an offer put forward by Bowen to settle his outstanding tax due was submitted solely to delay the IRS's collections actions. Am. Compl. at ¶ 22–23. This caused the OIC group to deny Bowen's offer as a matter of policy. Am. Compl. at ¶ 24.

Beginning in January 2019 and continuing through January 2020, Officers Goetz and Considine attempted to secure a judgment against plaintiff – sometimes referred to as a "tax death sentence" – for alleged taxes due in excess of $1 million. Am. Compl. at ¶ 25–26. However, the IRS's counsel's office denied the request. Am. Compl. at ¶ 27.

In December 2019, Officer Goetz sent Bowen a notice of intent to contact individuals with whom Bowen had a personal relationship in an effort to collect taxes that Officer Goetz claimed that Bowen owed. Am. Compl. at ¶ 28. At around the same time, Officer Goetz sent a "notice of levy" to Bowen's business clients and friends, indicating that Bowen owed certain amounts of back taxes. Am. Compl. at ¶ 29. The notice

demanded that recipients of the notice pay any amounts payable to Bowen to the IRS instead. *Id.*

On January 7, 2020, Officer Goetz levied a $1,999,526.54 trust fund recovery penalty against accounts that Bowen had on deposit at Citizens Bank. Am. Compl. at ¶ 31. Further, at some point prior to March 11, 2020, Bowen filed a request with the IRS Independent Office of Appeals for a Collection Due Process or Equivalent hearing ("CDP Hearing"). Am. Compl. at ¶ 33; *see generally,* 26 U.S.C. § 6330(b). In particular, Bowen raised issues at the hearing related to "challenges to the appropriateness of collection actions," and "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise." Am. Compl. at ¶ 34 (citing 26 U.S.C. § 6330(c)(2)(A)(ii)–(iii)). The CDP Hearing was pending from at least March 11, 2020 until May 20, 2021. Am. Compl. at ¶ 37.

Nevertheless, during the pendency of Bowen's CDP Hearing, Officer Goetz continued to engage in collection activities against Bowen. Am. Compl. at ¶ 36. For instance, on March 31, 2020, Officer Goetz levied Bowen's bank account, one day before the IRS's guideline IR-2020-59 went into effect suspending all collection activities to ease taxpayer burden during the pandemic. Am. Compl. at ¶ 39. Bowen alleges that this levy amounted to a violation of 26 U.S.C. § 6330(e)(1). Am. Compl. at ¶ 39.

Then, on June 25, 2020, Officers Goetz and Considine engaged in *ex parte* communication with IRS appeals personnel, and accused Goetz of lying to the IRS regarding his financial condition. Am. Compl. at ¶ 43. Finally, on October 9, 2020, Officer Goetz contacted Bowen by phone, told Bowen that he was in charge of the appeals

process for Bowen's CDP Hearing, made numerous document demands, and questioned Bowen about the authenticity of documents Bowen had previously submitted. Am. Compl. at ¶ 44–45.

Because of the foregoing conduct, Bowen wrote to Officer Goetz on October 23, 2020 requesting that he recuse himself from the management of Bowen's case. Am. Compl. at ¶ 49. The following month, Bowen wrote to the IRS Settlement Officer handling his CDP Hearing, notifying the officer of what Bowen believed to be Officer Goetz's unlawful and unauthorized conduct related to Goetz's involvement in the appeals process. Am. Compl. at  ¶ 50.

On May 20, 2021, Bowen's request to the IRS Independent Office of Appeals for an installment payment plan was approved. Am. Compl. at ¶ 51. At that time, Bowen was informed that his request for an installment agreement had been approved because of his allegations that Officers Goetz and Considine had abused their discretion in denying his prior requests for an installment plan, and because of Officer Goetz's conduct toward Bowen between 2015 and 2020. Am. Compl. at ¶ 52. Bowen alleges that Officer Goetz's conduct during that time "had the natural consequence of harassing, oppressing, and abusing [Bowen] in connection with the collection of unpaid taxes in violation of 26 U.S.C. § 6304(b)." Am. Compl. at ¶ 48.

Thereafter, on June 15, 2022, Bowen filed the instant action, alleging that "the actions described above constitute a continuing course of conduct on the part of [Officers] Goetz and Considine to engage in unlawful, unauthorized, and illegal activities and intentional, willful, and malicious abuse of discretion and authority related to illegal

collection activities against plaintiff." Compl. at ¶ 46. More specifically, in his amended complaint Bowen alleges that he sustained direct economic damages totaling over $1 million as a proximate result of Officers Goetz's and Considine's reckless or intentional activities, which amounted to violations of 26 U.S.C. § 6403(b). Am. Compl. at ¶ 62–66. As such, he seeks compensatory damages, costs and reasonable attorney fees pursuant to 26 U.S.C. § 7433 and § 7430. Am. Compl. at ¶ 1.

In August 2022, the government filed the motion to dismiss under Rule 12(b)(1) and 12(b)(6) under the Federal Rules of Civil Procedure that is presently before the Court. Def. Mem. of Law, Aug. 27, 2022, ECF No. 8-1.

## IV. THE GOVERNMENT'S MOTION TO DISMISS

The United States, as sovereign, may be sued only to the extent that it waives sovereign immunity and consents to be sued. *Buczek v. United States*, No. 15-CV-273S, 2018 WL 2119587, at *3 (W.D.N.Y. May 8, 2018) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The waiver of sovereign immunity must be unequivocally expressed, and will be strictly construed in the government's favor. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992).

Plaintiff brings his claim pursuant to 26 U.S.C. § 7433, which waives sovereign immunity for an action against the IRS for wrongful collection of taxes by providing, in pertinent part:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7433(a).

In support of its motion to dismiss, the government maintains that the Court is without jurisdiction to hear Bowen's claim because "almost all of the alleged improprieties occurred more than two years before the Complaint was filed, and thus beyond the applicable statute of limitations." Def. Mem. of Law at 3. In addition, the government argues that Bowen has failed to state a claim upon which relief may be granted because: (i) he has failed to identify any statute or regulation that the government violated, (ii) his administrative claim was insufficient, and (iii) many of his allegations do not involve collections activity.

A. The Government's Rule 12(b)(1) Argument

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

In the present case, the government argues that this Court lacks subject matter jurisdiction to consider any claims related to the incidents Bowen alleges occurred before June 15, 2020, because they are time barred. Def. Mem. of Law at 3–9. Bowen counter-argues that all of his claims are timely, and invokes the continuing violation doctrine to

argue that "[i]t was the cumulative impact of the revenue agents' repeated conduct continuing into the limitations period . . . that revealed and compelled the conclusion that Goetz's actions rose to the level of harassing and illegal conduct in violation of 26 U.S.C. § 6304(b)." Pl. Mem. in Opp. at 7.

### 26 U.S.C. § 7433

As indicated above, "[w]hen an action is brought against the United States government, compliance with the conditions under which the government has agreed to waive sovereign immunity is necessary for subject matter jurisdiction to exist." *Flynn v. NFS*, No. 3:16-CV-01365 (SRU), 2016 WL 7246070, at *1 (D. Conn. Dec. 15, 2016) (quoting *Williams v. United States*, 947 F.2d 37, 39 (2d Cir. 1991)) (internal quotation marks omitted). With respect to a claim under § 7433, the statute makes clear that an action to enforce liability under § 7433 "[m]ay be brought only within two years after the date the right of action accrues." *Hynard v. I.R.S.*, 233 F. Supp.2d 502, 509 (S.D.N.Y. 2002), *aff'd*, 87 F. App'x 220 (2d Cir. 2004) (quoting 26 U.S.C. § 7433(d)(3)).

A plaintiff's failure to comply with the conditions set forth in the statute or its related regulations deprives the federal district court of jurisdiction. *United States v. Dalm,* 494 U.S. 596, 608 (1990) ("the United States, as sovereign, 'is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit' . . . . A statute of limitations . . . is one of those terms.") (internal citation omitted); *see also Weisman v. Comm'r of IRS*, 103 F. Supp.2d 621, 626 (E.D.N.Y. 2000) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)) ("When a statutory waiver of immunity exists, a plaintiff must strictly comply with the conditions to

suit outlined by the statute or corresponding regulation.").

*The Continuing Violation Doctrine*

The Second Circuit has described the "continuing violation doctrine" as follows:

> The continuing violation doctrine, where applicable, provides an "exception to the normal knew-or-should-have-known accrual date." *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999). It applies to claims "composed of a series of separate acts that collectively constitute one unlawful [ ] practice." *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)). The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a "serial violation[ ]," but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. *Morgan*, 536 U.S. at 114–15.

> Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has "engaged in enough activity to make out an actionable . . . claim." *Id.* at 117. A claim will be timely, however, only if the plaintiff "allege[s] . . . some non-time-barred acts" contributing to the alleged violation. *Harris*, 186 F.3d at 250.

*Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).

The Second Circuit further noted that although the doctrine typically arises in the context of a complaint of unlawful workplace discrimination challenged under Title VII of the Civil Rights Act of 1964, "its application is by no means limited to that context." *Gonzalez*, 802 F.3d at 220. Rather, "[t]he controlling feature of the doctrine is not the source of the right of action, but rather the characteristics of the claim," which the circuit court divided into two categories for purposes of a "continuing violation" analysis. *Id.* at 221. On the one hand, laws such as Title VII have a statute of limitations with an "occurrence-based trigger," by which the statute of limitations begins to run when the "unlawful employment practice has occurred." *Id.* (quoting *Mix v. Delaware & Hudson Ry. Co.*, 345 F.3d 82, 89 (2d Cir. 2003)). On the other hand, other laws have a "discovery-

based trigger," by which the statute of limitations begins to run when the plaintiff discovers or has enough information from which he or she should have discovered the injury and its cause. *Id.* (quoting *Mix*, 345 F.3d at 89). Although the circuit court declined to establish a categorical rule, it did note that the continuing violation doctrine tended to apply where the statute had an "occurrence-based trigger." *Gonzalez*, 802 F.3d at 221.

*Application*

Actions under 26 U.S.C. § 7433 typically are subject to a "discovery-based trigger." Under the implementing regulation for § 7433, a cause of action accrues "when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action." *Hynard*, 233 F. Supp.2d at 509 (quoting 26 C.F.R. § 301.7433–1(g)(2)). The Court of Appeals for the D.C. Circuit has stated that this "reasonable opportunity" language "sets a relatively low bar," and that § 7433 precludes a suit over conduct outside the limitations period "if the plaintiff had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts." *Keohane v. United States*, 669 F.3d 325, 329 (D.C. Cir. 2012) (internal quotation marks and citation omitted); *see also Kovacs v. United States*, 614 F.3d 666, 674 (7th Cir. 2010) (explaining that the "statute of limitations on § 7433 begins to run once a plaintiff has knowledge that would lead a reasonable person to investigate the possibility that his legal rights had been infringed") (internal quotation marks and citations omitted)).

In the present case, Bowen filed his complaint on June 25, 2022, meaning that the statute of limitations precludes him from pursuing any claims under § 7433 accruing before June 25, 2020, unless the continuing violation doctrine is found to apply. Based

11

on the Court's review of the pleadings and the parties' papers, including Bowen's Amended Complaint, the Court finds that the continuing violation doctrine does not save Bowen's pre-June 2020 claims.

Bowen alleges that beginning in September 2015 and running through November 2020, Officers Goetz and Considine denied seven separate requests for an installment payment plan agreement, while simultaneously attempting to collect assessed taxes through bank account levies and accounts receivable levies and denying Bowen "his right to basic living expenses." Am. Compl. at ¶ 18. He does not argue that he was entitled to acceptance of his requests, or that – with the exception of attempts to levy his account during the pendency of his CDP hearing – the bank account or accounts receivable levies were somehow procedurally or substantively deficient under taxpayer protections afforded by 26 U.S.C. § 6330. *See* § 6330(a), (d) (requiring the IRS to notify a person in writing of their right to a hearing before levy is made on any property or right to property of any person, and describing the procedure for taxpayer appeal of an unfavorable outcome to the United States Tax Court).

The Court finds that the continuing violation doctrine does not apply to Bowen's allegations regarding improper denials of a payment plan agreement and improper levies that occurred prior to June 15, 2020. As the Second Circuit has stated, "[t]he continuing violation doctrine [does not apply] to discrete unlawful acts, even where those discrete acts are part of a 'serial violation[ ],' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez,* 802 F.3d at 220 (quoting *Morgan*, 536 U.S. at 114–15). Each instance in which Bowen was

allegedly improperly denied a payment plan, or his bank account or accounts receivable were improperly levied, served as a "reasonable opportunity" for the Bowen to investigate and or discover the elements of a claim, particularly where the alleged unlawful conduct denied Bowen the ability even to meet his "basic living expenses." Am. Compl. at ¶ 18. Each discrete occurrence would serve as its own violation of the taxpayer's due process rights under § 6330(e)(1), or his right to be free from harassment under § 6304(b).

Similarly, the continuing violation doctrine would not apply to Bowen's allegations regarding Officer Goetz's October 2015 conduct, in which he sent Bowen a compiled list of all tax amounts due, including statute expiration dates which Officer Goetz knew or should have known were false. Am. Compl. at ¶ 19. As Bowen points out, a document dated May 15, 2018 – more than two years prior to the limitations period – demonstrates that the expiration dates were false. Am. Compl. at ¶ 20. To be sure, a gap of approximately three years in communication regarding the collection statutes raises the question as to whether the violation may be said to be "continuing." But even if it were, the May 2018 document provided a reasonable opportunity for Bowen to investigate the possibility that his legal rights had been infringed back in 2015.

With respect to Bowen's allegations regarding Officer Goetz's contact with the IRS "offer-in-compromise" group in December 2018 to falsely inform them that Bowen's offer to compromise was submitted solely to hinder or delay collection actions, the Court is not certain that such an allegation– even if true – constitutes an actionable claim for improper "collections activity" under § 7433. *See also* 26 U.S.C. § 6304(b) (listing examples of harassment and abuse, each of which involves direct communication between the agency

13

and the taxpayer). So, too, the Court is skeptical that Officers Goetz's and Considine's attempts – apparently internal – between January 2019 and January 2020 to convince IRS counsel's office to pursue and secure a judgment against Plaintiff for alleged taxes due is actionable under § 7433. *See* 26 U.S.C. § 7401 and § 6322 (general authorization to file suit against a taxpayer, and acknowledgment that the IRS has the authority to seek to reduce a tax lien to judgment). Nevertheless, even if the allegations did constitute a claim under § 7433, the incidents themselves provided Bowen with a reasonable opportunity to investigate possible wrongdoing and discover the essential elements of any claim against the government.

Finally, Bowen alleges a series of improper levies that occurred in late 2019 and early 2020 to which the continuing violation doctrine also does not apply. Bowen alleges that Officers Goetz and Considine sent a notice of levy to his clients, friends and acquaintances in December 2019 demanding that amounts payable to Bowen be paid to the IRS instead. Am. Compl. at § 29–30. He also alleges that Officer Goetz levied his bank account for almost $2 million in January 2020 (¶ 31), and again levied his bank accounts on March 31, 2020 (¶ 38). As each of these activities likely had significant impact on Bowen's financial health, the Court finds that each of these instances presented Bowen with a reasonable opportunity to investigate whether his legal rights were infringed.

In sum, the Court finds that the continuing violations doctrine does not apply to Bowen's allegations of injury prior to June 2020, that each of these claims accrued outside of the two-year limitations period under § 7433(d), and therefore that they must be

dismissed under Rule 12(b)(1) because the Court lacks subject matter jurisdiction to hear them.

Nevertheless, Bowen's claims related to Officers Goetz's and Considine's conduct on June 25, 2020, October 9, 2020, and thereafter proceed to the next step in the analysis.

B. The Government's Rule 12(b)(6) Arguments

In addition to arguing for dismissal on the basis of lack of jurisdiction, the government maintains that Bowen's complaint must be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To begin with, the government argues that Bowen's complaint fails to state a claim because he failed to identify the statute or regulation that the IRS violated in its tax collection efforts. Def. Mem. of Law at 14–16. The government also maintains that Bowen's complaint must be dismissed because the present action is actually a challenge to tax assessments under the guise of a challenge to collections activity under § 7433. Def. Mem. of Law at 16–18. The government further argues that Bowen's administrative claim was inadequate to constitute exhaustion of his administrative remedies, it did not put the IRS on notice of the specific statutes and regulations that Bowen alleges to have been violated, and it did not substantiate his alleged damages. Def. Mem. of Law at 18–19.

*Rule 12(b)(6) Standard*

It is well-settled that the purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is to test . . . the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global*

*Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted). The court must draw all reasonable inferences in the plaintiff's favor and accept all factual allegations in the complaint as true, but need not attach any weight to legal conclusions and conclusory statements. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

An action must be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To survive a motion to dismiss under Rule 12(b)(6), on the other hand, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where a plaintiff's factual allegations are "merely consistent with" a defendant's liability, those allegations "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (citation and internal quotation marks omitted).

*Notice of Specific Statute & Challenge to Assessment*

With respect to the government's argument that Bowen's complaint should be dismissed because he failed to identify the specific statutes that were violated, the Court finds that it has been sufficiently addressed by Bowen's proposed amended complaint, in

16

which he maintains that Officers Goetz and Considine violated the prohibition of the harassment and abuse of taxpayers under 26 U.S.C. § 6304(b). *See, e.g.,* Am. Compl. at ¶ 62. With respect to the government's argument regarding the nature of Bowen's claims, the Court agrees with Bowen that the argument mischaracterizes Bowen's allegations; Bowen is not challenging the amount of taxes that he has been assessed, but rather the conduct of Officers Goetz and Considine in the course of their collections efforts, and the damage they allegedly caused to his business revenue. *See* Am. Compl. at ¶ 66(a).

*Exhaustion of Administrative Remedies*

The Court turns, then, to the government's argument regarding exhaustion. The government contends that by failing to provide notice in his administrative claim of the statutory provisions that Officers Goetz and Considine are alleged to have violated, and failing to substantiate his claimed damages with additional documentation, Bowen has failed to exhaust his administrative remedies. Bowen counter-argues that his administrative claim, which is attached to his proposed amended complaint as Exhibit A, provided sufficient detail to constitute exhaustion. Further, Bowen maintains that the Court cannot assume at this stage "that there was . . . substantiating documentation and cannot find [Bowen]'s administrative claim deficient for this reason." Pl. Mem. in Opp. at 6.

The Supreme Court has frequently confirmed the importance of enforcing requirements to exhaust administrative remedies:

> "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." . . . . "The doctrine provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" . . . .

Exhaustion of administrative remedies serves two main purposes . . . .

First, exhaustion protects "administrative agency authority." . . . . Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures." . . . .

Second, exhaustion promotes efficiency . . . . Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court . . . . "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." . . . .

* * *

Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." . . . . Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Woodford v. Ngo*, 548 U.S. 81, 88–91 (2006) (multiple internal citations omitted).

The procedure for exhausting administrative remedies under 26 C.F.R. § 7433 is set forth in 26 C.F.R. § 301.7433-1(e). Under 26 C.F.R. § 301.7433-1, an administrative claim must "be sent in writing to the Area Director, Attn: Compliance Technical Support Manager of the area in which the taxpayer currently resides." 26 C.F.R. § 301.7433-1(e). Additionally, the claim must include:

(i) The name, current address, current home and work telephone numbers and any convenient times to be contacted, and taxpayer identification number of the taxpayer making the claim;

(ii) The grounds, in reasonable detail, for the claim (include copies of any

available substantiating documentation or correspondence with the Internal
Revenue Service);

(iii) A description of the injuries incurred by the taxpayer filing the claim
(include copies of any available substantiating documentation or evidence);

(iv) The dollar amount of the claim, including any damages that have not
yet been incurred but which are reasonably foreseeable (include copies of
any available substantiating documentation or evidence); and

(v) The signature of the taxpayer or duly authorized representative.

26 C.F.R. § 301.7433-1(e)(2).

Here, Bowen has alleged that he "has exhausted all administrative remedies
necessary for the bringing of this action," and has attached his administrative claim[1] as
"Exhibit A" to his Amended Complaint. Ex. A, Oct. 31, 2023, ECF No. 15-2. The claim as
submitted satisfies each of the five elements of the prescribed form of an administrative
claim under 26 C.F.R. § 301.7433-1(e)(2). The claim is dated within the applicable
limitations period (§ 301.7433-1(d)(2)); addressed to the proper party (§ 301.7433-1(e));
clearly identifies the claimant (§ 301.7433-1(e)(2)(i)); sets forth approximately two pages
of factual detail regarding the grounds for his claim (§ 301.7433-1(e)(2)(ii)); describes at
least two forms of injury that he has suffered (§ 301.7433-1(e)(2)(iii)); demands damages
in the amount of $1 million (§ 301.7433-1(e)(2)(iv)); and includes Bowen's signature
(§ 301.7433-1(e)(2)(v)).

While the Court agrees with the government that a more complete and effective
administrative claim would have included substantiating documentation for Bowen's
allegations of injury, the Court is satisfied that Bowen's allegations with respect efforts to

---

[1] The government states that the IRS has no record of receiving Bowen's administrative claim, but assumes
for the purposes of this motion that the claim was properly mailed. Def. Mem. of Law at 19, n.3.

exhaust his administrative remedies are sufficient to satisfy the requirements of 26 U.S.C. § 7433(d)(1) for the purposes of this motion. Most significantly, the Court notes that the conduct at issue in this case going forward does not involve notices of levy or assessment, or any other form of official documentation, but rather Bowen's allegations of (1) improper *ex parte* communication between Officer Goetz and other IRS officials involved with Bowen's CHP Hearing beginning on June 25, 2020 (Am. Compl. at ¶ 42–43); Goetz's phone call to Bowen on October 9, 2020, in which he is alleged to have falsely informed Bowen that he was in charge of Bowen's appeals process in a ploy to obtain additional documents (Am. Compl. at ¶ 44–45); and any other improper communications occurring during the limitations period beginning June 15, 2020. Such allegations do not readily lend themselves to documentation to substantiate Bowen's claim. Moreover, as Bowen's allegations regarding improper levies of his bank accounts and accounts receivable in 2019 and 2020 may not serve as the basis of any claims as this case proceeds, documentation regarding his monetary damages is also of less significance.

Consequently, the Court declines the government's request that Bowen's remaining allegations be dismissed for failure to state a claim.

### V. BOWEN'S CLAIM FOR ATTORNEY'S FEES

The government further maintains that "Bowen is not entitled to attorneys' fees because he cannot substantially prevail." Def. Mem. of Law at 21. 26 U.S.C. § 7430 provides that the prevailing party in any administrative or court proceeding brought against the United States in connection with the collection of taxes may be awarded a judgment for reasonable administrative and litigation costs, including attorneys' fees.

Given that some of Bowen's claims will proceed forward to the next stage of litigation, the Court declines at this time to rule with respect to an entitlement under § 7430 to any costs or fees.

## CONCLUSION

Accordingly, it is hereby,

ORDERED that Plaintiff J.D. Bowen's motion for leave to file his first Amended Complaint [ECF No. 15] is granted; and it is further

ORDERED that Defendant United States' motion to dismiss for lack of jurisdiction and for failure to state a claim [ECF No. 8] is granted with respect to Bowen's allegations regarding conduct that occurred before the limitations period began on June 15, 2020, and denied with respect to Bowen's allegations regarding conduct that occurred within the limitations period beginning on June 15, 2020; and it is further

ORDERED that Defendant shall file and serve its answer to Bowen's amended complaint on or before 21 days from the date of this order.

SO ORDERED.

Dated:      June 14, 2023
            Rochester, New York

ENTER:

_____
CHARLES J. SIRAGUSA
United States District Judge