UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

J.D. BOWEN,
                    Plaintiff,

v.

UNITED STATES OF AMERICA,
                    Defendant.

22-CV-6275 (CJS)

DECISION AND ORDER

## INTRODUCTION

Plaintiff J.D. Bowen brings this action under 26 U.S.C. § 7433's limited waiver of sovereign immunity, asserting claims against the United States based on alleged improper actions by the Internal Revenue Service ("IRS"), specifically Revenue Officer Scott Goetz ("Goetz"). At the heart of this case is Bowen's contention that Goetz violated 26 U.S.C. §§ 6304(b) and 6330(e)(1) by engaging in unauthorized actions intended to harass, oppress, or abuse him into settling outstanding tax liabilities during a period in which Bowen argues that all collection activity was prohibited. These alleged actions include improper demands for financial documents, improper internal investigative procedures, and unauthorized communications—including false and defamatory statements—which Bowen characterizes as "unlawful collection activities" under § 7433. Ultimately, Bowen contends that Goetz violated provisions of the Internal Revenue Code ("IRC") in connection with the collection of federal tax, thereby entitling him to relief under § 7433. Am. Compl. ¶¶ 1, 33–37, 42–48; Pl.'s Opp. at 1–5; Pl.'s Rule 56 Stmt. ¶¶ 6–10.

Bowen initially raised broader allegations of IRS misconduct spanning periods both before and after the filing of his complaint, but prior rulings in this litigation have narrowed the actionable claims. Specifically, the Court held that any alleged misconduct occurring before June 15, 2020 was

1

barred by the statute of limitations under 26 U.S.C. § 7433(d)(3), and permitted Bowen to proceed only on claims arising between June 15, 2020 and June 15, 2022. *See Bowen v. United States*, 2023 U.S. Dist. LEXIS 103503, at *10–11 (W.D.N.Y. June 15, 2023).

The Government now moves for summary judgment, maintaining that none of Bowen's remaining allegations involve actionable "collection" misconduct within the narrow scope defined by § 7433's waiver of sovereign immunity. The Government argues that the statute expressly limits taxpayer suits to misconduct directly associated with seizing assets or securing taxpayer property, excluding administrative and investigative steps alleged by Bowen. Def.'s Mem. Supp. Mot. Summ. J. at 1–2, 5–6. Thus, the pivotal question before this Court is whether the IRS's remaining alleged conduct amounts to "collection" activities as contemplated under the narrow waiver of sovereign immunity provided by § 7433. For the reasons discussed below, the alleged conduct does not fall within the scope of 26 U.S.C. § 7433 and, in the absence of a valid waiver, sovereign immunity deprives the Court of jurisdiction. Accordingly, the case is dismissed without prejudice.

## BACKGROUND

The following background is drawn from Bowen's Amended Complaint and his responses to the Government's Motion for Summary Judgement, accepting as true the factual allegations and drawing all reasonable inferences in Bowen's favor. *See Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018), aff'd, 141 S. Ct. 486, 208 L. Ed. 2d 295 (2020). Bowen commenced this action on June 15, 2022, asserting, as noted above, claims under 26 U.S.C. § 7433 against the United States based on alleged improper conduct. Bowen's current allegations revolve around actions taken by Goetz between June 15, 2020, and June 15, 2022. *See Bowen v. United States*, 2023 U.S. Dist. LEXIS 103503; Pl.'s Opp. at 1–2; Pl.'s Rule 56 Stmt. ¶¶ 6–10.

Bowen's dispute with the IRS arises from that agency's longstanding efforts to enforce his unpaid federal tax obligations. On or about March 11, 2020, he formally requested a Collection Due Process ("CDP") hearing. Am. Compl. ¶ 33; Pl.'s Rule 56 Stmt. ¶ 4. Bowen contends that, under 26 U.S.C. § 6330(e)(1), such a request triggers a suspension of collection activity while the hearing is pending. Am. Compl. ¶ 36; Pl.'s Opp. at 2; Pl.'s Rule 56 Stmt. ¶¶ 4–5. Nevertheless, Bowen alleges that Goetz violated this statutory suspension by continuing to pursue aggressive and unauthorized collection efforts during that time. Am. Compl. ¶¶ 36–37; Pl.'s Opp. at 2–3; Pl.'s Rule 56 Stmt. ¶ 6.

Specifically, Bowen contends that on June 25, 2020, Goetz improperly conducted a series of actions aimed at tax collection. These actions included verifying Bowen's income, expenses, and assets; analyzing the equity Bowen held in his assets; and reviewing a financial statement Bowen had submitted for his CDP hearing. Pl.'s Opp. at 2; Pl.'s Rule 56 Stmt. ¶ 6. More significantly, Bowen alleges that Goetz violated IRS *ex parte* rules by using the agency's internal Computer Information System (CIS) to communicate directly with the Independent Office of Appeals staff assigned to Bowen's CDP case, thereby compromising that office's required independence. Am. Compl. ¶¶ 42–43; Pl.'s Opp. at 2. Bowen contends that through CIS, Goetz communicated false, misleading, and defamatory information, including allegations that Bowen had committed perjury in his sworn statements to the IRS. Am. Compl. ¶¶ 43, 47; Pl.'s Opp. at 2–3; Pl.'s Rule 56 Stmt. ¶ 6. Additionally, Goetz investigated Bowen's and his spouse's bank accounts, reporting this information improperly through CIS. Pl.'s Opp. at 2; Pl.'s Rule 56 Stmt. ¶ 6.

Bowen further alleges that on June 26, 2020, Goetz again improperly acted by faxing an IRS Form 9297, titled "Summary of Taxpayer Contact," to Bowen's attorney-in-fact, Gary Bluestein. Pl.'s Opp. at 3; Pl.'s Rule 56 Stmt. ¶ 7. IRS Form 9297 explicitly requested that Bowen produce fourteen categories of financial documents within nineteen days. Pl.'s Opp. at 3; Pl.'s Rule 56 Stmt. ¶ 7. Bowen emphasizes that IRS Form 9297 is inherently associated with IRS tax collection efforts, as

3

detailed in the Internal Revenue Manual (Part 5, Chapter 1, Section 10), making its use during a CDP suspension improper and coercive. Pl.'s Opp. at 3–4; Pl.'s Rule 56 Stmt. ¶ 8.

Bowen also challenges ongoing misconduct by Goetz in subsequent months. Notably, on October 9, 2020, Goetz allegedly made a direct phone call to Bowen himself. Am. Compl. ¶ 44; Pl.'s Opp. at 4; Pl.'s Rule 56 Stmt. ¶ 9. During this call, Goetz falsely represented that he was in charge of Bowen's CDP appeal—an appeal that largely contested Goetz's previous collection-related conduct. According to Bowen, Goetz further exacerbated the situation by demanding additional financial documentation, accusing Bowen of providing false information in past submissions, and asserting again that Bowen had committed perjury. Am. Compl. ¶¶ 44–46; Pl.'s Opp. at 4–5; Pl.'s Rule 56 Stmt. ¶ 9. Bowen argues these actions were explicitly designed to harass, intimidate, and coerce him into resolving his tax debts outside the CDP hearing protections. Am. Compl. ¶ 48; Pl.'s Opp. at 5; Pl.'s Rule 56 Stmt. ¶ 9.

In response, the United States maintains that none of Goetz's alleged activities within the two-year statute of limitations constitute "collection actions" under the precise meaning of 26 U.S.C. § 7433(a). According to the government, the statute narrowly defines "collection actions" as affirmative steps that directly result in seizing or securing taxpayer assets. Def.'s Mem. Supp. Mot. Summ. J. at 14–16. The government argues that verifying Bowen's financial information and requesting documentation in connection with a CDP hearing do not represent efforts to collect any assets from Bowen. Furthermore, the government emphasizes that CDP procedures inherently delay and inhibit, rather than facilitate, the collection of taxes. *Id.*

Bowen disputes this narrow interpretation of § 7433, insisting that the documented actions by Goetz were inherently collection-related, oppressive, and prohibited. Bowen contends that Goetz's role as a Revenue Officer was exclusively tied to tax collection and that the IRS Form 9297 and related actions taken during the CDP suspension were part of an unlawful, ongoing effort to

4

pressure Bowen into settling his tax liabilities outside the statutory protections afforded by a CDP hearing. Pl.'s Opp. at 2–5; Pl.'s Rule 56 Stmt. ¶¶ 6–10.

Ultimately, Bowen seeks monetary damages under § 7433 for economic harm and reputational injury he attributes to Goetz's allegedly reckless and intentional misconduct in disregard of IRS regulations and statutory protections. Am. Compl. ¶¶ 1, 62, 66. The Government, however, seeks summary judgment, asserting that even if Bowen's factual allegations are accepted as true, the conduct described does not legally constitute actionable "collection" misconduct under § 7433. Def.'s Mem. Supp. Mot. Summ. J. at 5–6.

## GENERAL PRINCIPLES APPLICABLE TO RULE 56 MOTIONS

Defendant has moved for summary judgment, pursuant to Fed. R. Civ. P. 56, which may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), cert denied, 517 U.S. 1190, 116 S. Ct. 1678, 134 L. Ed. 2d 780 (1996).

Additionally, the movant must demonstrate, and not merely assert, that he is entitled to judgment under the relevant principles of law. *See, Baker v. Anschutz Expl. Corp.*, 68 F. Supp. 3d 368,

5

373 (W.D.N.Y. 2014) ("While the absence of any genuine dispute of material fact is a precondition for summary judgment, the crux of a summary judgment analysis is whether the movant has established entitlement to judgment as a matter of law.") (quoting 11-56 MOORE'S FEDERAL PRACTICE—CIVIL § 56.20 (Matthew Bender 2014)), adhered to on reconsideration, No. 11-CV-6119 CJS, 2016 U.S. Dist. LEXIS 33353, 2016 WL 981858 (W.D.N.Y. Mar. 15, 2016); *see also, Darley v. U.S.*, No. 22-CV-00714 (PMH), 2025 U.S. Dist. LEXIS 75747, 2025 WL 1159518, at *3 (S.D.N.Y. Apr. 21, 2025) ("Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. Simply put, the movant must separately establish that the law favors the judgment sought.") (citations omitted).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold*, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993).

## DISCUSSION

The Government seeks summary judgment on Bowen's claim under 26 U.S.C. § 7433(a), arguing that the conduct he challenges falls outside the statute's limited waiver of sovereign immunity. To succeed under § 7433, Bowen must demonstrate not only that the IRS disregarded provisions of the Internal Revenue Code, but also that such disregard occurred "in connection with any collection of Federal tax." The parties do not dispute the material facts concerning what the IRS

6

did or when it acted. The sole issue is legal: whether the agency's alleged conduct—document demands, investigative log entries, and informal communications during Bowen's Collection Due Process hearing—constitutes "collection" activity as that term is understood under § 7433(a). Def.'s Mem. Supp. Mot. Summ. J. at 1–2, 5–6

### Interpreting the Scope of the Sovereign Immunity Waiver in 26 U.S.C. § 7433

The United States, as sovereign, may be sued only to the extent that it waives sovereign immunity and consents to be sued. *See Buczek v. United States*, No. 15-CV-273S, 2018 U.S. Dist. LEXIS 77471, 2018 WL 2119587, at *3 (W.D.N.Y. May 8, 2018) (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941)). The waiver of sovereign immunity must be unequivocally expressed, and will be strictly construed in the government's favor. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992). Plaintiff brings his claim pursuant to 26 U.S.C. § 7433, which waives sovereign immunity for an action against the IRS for wrongful collection of taxes by providing, in pertinent part:

> "If, in connection with any collection of Federal tax, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States."

26 U.S.C. § 7433(a). The phrase "in connection with any collection of Federal tax" is critical. Congress explicitly considered—but ultimately rejected—broader language for § 7433 that would have allowed lawsuits for misconduct connected to both the determination and collection of taxes. *See Hudson Valley Black Press v. IRS*, 409 F.3d 106, 112–13 (2d Cir. 2005); *see also* S. 2223, 100th Cong., 2d Sess. § 123 (1988); *see also* H.R. Conf. Rep. 100-1104 ("Conference Report"), 100th Cong., 2d Sess., at 228 (Oct. 21, 1988), 1988 U.S.C.C.A.N. 5048, 5288. Instead, Congress chose to limit suits under § 7433 to violations arising from tax collection activities—such as garnishments, levies, or

7

liens—and to exclude assessment-related actions like audits or calculations of liability. *See Hudson Valley*, 409 F.3d at 112–13. Congress provided other remedies for IRS misconduct outside of collection, including internal investigations by the Treasury Inspector General, disciplinary procedures, criminal penalties, and avenues such as CDP hearings or Tax Court review. *See id.* at 114. These alternatives confirm Congress's intent to cabin § 7433 to conduct directly tied to the enforcement of payment.

This distinction between "assessment" and "collection" is central to understanding the limited reach of § 7433(a). An assessment involves determining or calculating a taxpayer's liability; it does not involve the actual taking the taxpayer's assets at this stage. 26 U.S.C. § 6201. By contrast, collection explicitly includes active enforcement steps such as levying bank accounts, recording liens, garnishing wages, and other direct seizures of property. 26 U.S.C. ch. 64. Congress intentionally separated these two phases, ensuring that only genuine enforcement actions would fall within the limited immunity waiver of § 7433(a). If assessment activities were also considered "collection," the distinction would collapse, undermining Congress's explicit choice to protect taxpayers from abuses specifically tied to enforcement efforts alone.

District courts within this Circuit have explored this assessment-versus-collection divide. For example, claims disputing the calculation of interest—even when followed by notices of levy—are firmly part of the assessment process and thus fall outside § 7433's limited waiver. *See Ihasz v. United States*, 997 F. Supp. 547, 550-51 (D. Vt. 1997). *Ludtke v. United States* held that assessment-related actions—such as the issuance of a trust fund recovery penalty and referral to IRS Appeals—do not constitute collection activity actionable under § 7433. *See Ludtke v. United States*, 84 F. Supp. 2d 294, 302 (D. Conn. 1999). *Dourlain v. United States* further underscored this distinction by holding that challenges must target improper levy procedures themselves rather than the correctness of the underlying assessment. No. 5:06-CV-424, 2008 U.S. Dist. LEXIS 90465, at 16-17 (N.D.N.Y. Aug. 27,

2008). Likewise, *Evseroff v. United States*, clarified that even allegedly improper DOJ referrals made during compromise negotiations are assessment-related procedural decisions squarely beyond § 7433's scope. No. 03-CV-0317, 2004 U.S. Dist. LEXIS 21231, at 9-10 (E.D.N.Y. Sept. 22, 2004).

Other circuits addressing § 7433 consistently stress that actionable IRS conduct must involve steps directly aimed at collecting or securing taxpayer property, rather than preliminary procedural or investigative actions. The Ninth Circuit in *Miller v. United States* underscored that even significant assessment-stage actions like emergency jeopardy assessments are not actionable without subsequent coercive steps toward actual collection. 66 F.3d 220, 222–24 (9th Cir. 1995). Likewise, the Seventh Circuit in *Goldberg v. United States* rejected efforts to broadly interpret "collection" to include administrative notice errors, reasoning that such procedural issues do not qualify absent direct efforts to seize or compel taxpayer assets. 881 F.3d 529, 534–35 (7th Cir. 2018). The D.C. Circuit in *Kim v. United States* clarified that § 7433 liability attaches only after affirmative statutory collection notices—distinct from mere internal assessment records—are issued to taxpayers. 632 F.3d 713, 716 (D.C. Cir. 2011).

In *Shaw v. United States*, the Fifth Circuit further refined this assessment-collection divide, explaining that "to prove a claim for improper assessment, a taxpayer must demonstrate why no taxes are owed, but to prove a claim for improper collection practices, the taxpayer must demonstrate that the IRS did not follow the prescribed methods of acquiring assets." 20 F.3d 182, 184–85 (5th Cir. 1994). This formulation in Shaw suggests that § 7433 may reach procedural violations, but only when they involve deviations from the "prescribed methods of acquiring assets" —that is, when the IRS misuses or bypasses formal enforcement mechanisms like levies or seizures. Not covered under that language is procedural or administrative conduct that is neither part of the assessment of tax liability nor directly involved in acquiring assets.

9

That ambiguity is central to the present case. As highlighted by this Court in its ruling on the Government's earlier motion to dismiss:

> "Bowen is not challenging the amount of taxes that he has been assessed, but rather the conduct of Officers Goetz... in the course of their collections efforts, and the damage they allegedly caused to his business revenue. See Am. Compl. at ¶ 66(a)."

*See Bowen v. United States*, 2023 U.S. Dist. LEXIS 103503, at *22. While Bowen challenges the conduct of Officer Goetz rather than the validity of his tax assessment, the relevant distinction—articulated in *Hudson Valley Black Press*—is not between "conduct" and "assessment," but between "assessment" and "collection." The issue is whether conduct that falls outside the assessment process necessarily qualifies as collection activity under § 7433(a), or whether the statute contemplates a narrower understanding of "collection," limited to formal enforcement actions such as levies, liens, or other direct asset seizures. The core interpretive question is whether intermediate steps—such as investigative, procedural, or administrative actions that are neither part of the assessment process nor direct collection measures—can give rise to liability under § 7433.

The Sixth Circuit addressed this interpretive problem in *Agility Network Services, Inc. v. United States*, 848 F.3d 790 (6th Cir. 2017), where it held that alleged IRS misconduct during a CDP hearing —including *ex parte* communications and biased conduct by appeals officers—did not qualify as "collection" activity under § 7433(a). The court emphasized that CDP proceedings function to suspend, rather than advance, collection, and therefore IRS conduct during those proceedings is presumptively administrative. As the court put it, "an IRS agent acting in connection with tax collection would be taking an affirmative step to recover money owed to the government," whereas a CDP hearing is "a right bestowed upon a taxpayer ... to provide protection from abusive or unduly burdensome tax collection." *Id.* at 794.

Although *Agility* focused on the CDP hearing context, its reasoning is instructive in delineating the broader scope of § 7433. The court made clear that not all conduct outside the assessment process constitutes "collection." Rather, only IRS conduct that constitutes an affirmative step toward collecting money owed to the government—such as levying assets, garnishing wages, or recording liens—falls within the ambit of "collection activity" under §7433(a). *See id.* at 794 ("In common parlance, an IRS agent acting in connection with tax collection would be taking an affirmative step to recover money owed to the government"). CDP hearings, by contrast, occupy a middle ground: neither part of the assessment process nor affirmative collection actions. Procedural or administrative conduct that does not involve an "affirmative step to recover money owed to the government" falls outside the scope of § 7433. *See* 848 F.3d at 794.

In *Buaiz v. United States*, the District Court for the District of Columbia articulated this framework, rejecting the plaintiff's attempt to characterize a revenue officer's repeated requests for documents and investigatory communications as collection activity. *See Buaiz v. United States*, 471 F. Supp. 2d 129, 135–36 (D.D.C. 2007). While the conduct may have been burdensome or overzealous, the court found it did not constitute enforcement activity of the kind that triggers liability under § 7433. Importantly, the court identified the officer's conduct as part of an "investigation," expressly declining to treat all adverse IRS interactions as collection activity. *See id* at 135 ("[O]nly actions in connection with the collection of taxes are actionable; conduct associated with investigation or assessment of income tax is beyond the statute's waiver of sovereign immunity"). The statutory waiver, it emphasized, applies only to conduct that is both wrongful and undertaken "in connection with collection"—that is, conduct aimed at compelling or effectuating payment through affirmative means. *See id.*

This distinction echoes the Second Circuit's analysis in *Hudson Valley Black Press v. IRS*, which emphasized the need to preserve the statutory line between assessment and collection. *See* 409 F.3d

11

106 at 111. Yet *Agility* and *Buaiz* extend that logic by clarifying that not all non-assessment activity constitutes collection. Procedural, investigatory, or administrative actions—particularly those undertaken during CDP hearings or internal case processing—fall outside § 7433's scope absent some direct enforcement step.

Even if there were any ambiguity as to whether the IRS's investigatory or procedural conduct during the CDP period qualifies as "collection" under § 7433(a), waivers of sovereign immunity must be strictly construed in favor of the government, and may not be implied. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992). Congress chose to limit recovery to actions taken "in connection with any collection of Federal tax," and that language must be read with precision. Any interpretive doubt as to whether internal communications, administrative coordination, or investigatory outreach meet that threshold must be resolved against the existence of a waiver. Accordingly, such conduct does not fall within the ambit of § 7433 and cannot give rise to damages liability.

## Application of § 7433 to Bowen's Allegations

This framework bears directly on the present case. Bowen does not allege that the IRS levied his accounts, garnished his wages, or filed any liens during the actionable period. Pl.'s Resp. to Gov't First Set of Reqs. for Admis. at 2–3. Nor does he claim any error in the assessment of his tax liability. Rather, his challenge focuses on the investigative and administrative conduct of Goetz during the statutory suspension associated with a pending CDP hearing—including internal communications, *ex parte* contacts with Appeals officials, demands for financial documentation, and repeated phone calls. Am. Compl. ¶¶ 36, 42–46; Pl.'s Rule 56 Stmt. ¶¶ 6–9.

Notably, in response to the Government's First Set of Requests for Admissions, Bowen expressly acknowledged that he was unaware of "any affirmative step to collect any taxes, penalties,

or interest" by any IRS officer or representative during the period from June 15, 2020, through June 15, 2022. Pl.'s Resp. to Gov't First Set of Reqs. for Admis. at 2–3. After reviewing the Government's summary judgment motion—particularly its reference to *Agility Network Services*—Bowen appears to revise that position, submitting a Rule 56 Statement in which he characterizes Goetz's actions as "affirmative" efforts to verify Bowen's income, expenses, and assets, and to analyze his equity. Pl.'s Rule 56 Stmt. ¶ 6. However, the mere fact that an action may be described as "affirmative" does not transform it into an affirmative step to collect taxes within the meaning of § 7433. The conduct Bowen now emphasizes—verifying financial information and analyzing asset equity—is routinely categorized as part of the assessment process, not collection. Courts interpreting § 7433's waiver of sovereign immunity have consistently distinguished between these domains, holding that such investigatory and evaluative activities fall squarely within the assessment function. As such, they do not support a cause of action under § 7433.

Bowen's remaining allegations fit into four distinct categories of activity by Goetz: (1) improper *ex parte* communications with IRS Independent Office of Appeals ("IOA") personnel, including internal Collection Information System ("CIS") entries containing false or defamatory statements; (2) demands made directly to Bowen through IRS Form 9297; (3) communications with Bowen's attorney-in-fact, Bluestein, including voicemails referencing IRS Form 9297 and the pending appeal; and (4) direct communications with Bowen during the pendency of the CDP hearing process, including alleged misrepresentations about Goetz's authority and accusations of misconduct. Am. Compl. ¶¶ 42–46; Pl.'s Rule 56 Stmt. ¶¶ 6–9.

*Ex Parte* Communications and CIS Entries

Bowen contends that Goetz's internal agency communications, specifically *ex parte* contacts with the IRS Independent Office of Appeals (IOA) and entries into the IRS Collection Information

System (CIS), violated §§ 6304(b)[1] and 6330(e)(1)[2]. Bowen asserts that these CIS entries included false or defamatory statements, accusations of perjury, and unauthorized disclosure of financial details about Bowen and his spouse. Bowen contends these actions were coercive, undermined the independence of the appeals process, and constituted improper attempts to influence IRS collection decisions. Am. Compl. ¶¶ 42–43; Pl.'s Rule 56 Stmt. ¶ 6; Pl.'s Opp. Mem. at 2–3.

It is unclear whether this conduct is actually in violation of the Internal Revenue Code based on the sections highlighted by Bowen. Section 6304(b)'s list of examples of harassment emphasize direct, outward communications from IRS agents to taxpayers directly, which are clearly distinguished from internal agency communications. Section 6330(e)(1) expressly suspends only "levy actions" during the CDP process, not any collection activities and certainly not internal documentation or administrative communications.

However, even if Goetz's conduct did violate the Internal Revenue Code, Bowen's allegations still fall outside the narrow scope of § 7433. That statute does not provide a remedy for administrative or procedural improprieties unless those improprieties are directly tied to an attempt to seize taxpayer assets. *See Agility Network Servs., Inc. v. United States*, 848 F.3d 790, 795–96 (6th Cir. 2017). Claims like Bowen's—grounded in internal missteps rather than overt collection efforts—are more appropriately addressed through the IRS's internal disciplinary mechanisms, not through a statutory cause of action that waives sovereign immunity only in narrowly defined circumstances.

Consequently, despite the potentially improper nature of Goetz's *ex parte* CIS entries and related communications, Bowen's allegations fail to meet the statutory threshold necessary to

---

[1] Section 6304(b) provides that IRS personnel "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any unpaid tax." 26 U.S.C. § 6304(b).

[2] Section 6330(e)(1) mandates that "if a hearing is requested … the levy actions which are the subject of the requested hearing … shall be suspended for the period during which such hearing, and appeals therein, are pending." 26 U.S.C. § 6330(e)(1).

maintain a suit against the Government under § 7433. Congress explicitly excluded such internal administrative matters from § 7433's limited waiver, directing them instead toward internal disciplinary or administrative review mechanisms.

<u>IRS Form 9297 Demands</u>

Bowen also challenges Goetz's issuance of IRS Form 9297 ("Summary of Taxpayer Contact"), arguing this constituted a prohibited collection action during the suspension period initiated by the request for a CDP Hearing under 26 USC § 6330(e)(1). The form, issued on June 26, 2020, requested fourteen categories of detailed financial information from Bowen, including bank statements, pay stubs, and additional financial documentation. Pl.'s Rule 56 Stmt. ¶¶ 6–7.

Bowen emphasizes that Form 9297 is inherently tied to IRS collection practices. Pl.'s Rule 56 Stmt. ¶ 8; IRM 5.1.10.3.2; IRM 5.1.10.7.1. However, crucially, issuing Form 9297 does not itself constitute a levy, lien, garnishment, or other affirmative coercive act involving direct seizure of property. As discussed above, not all actions related to collection fall within the statutory meaning of collection activity under § 7433(a). The issuance of Form 9297, even if connected to broader enforcement efforts, is fundamentally an administrative step used to gather financial information in anticipation of potential collection—not a coercive act to seize property. *See* IRM 5.1.10.3.2 (Nov. 4, 2016); *see also* IRM 5.1.10.7.1 (Nov. 4, 2016).

This distinction is dispositive. *Hudson Valley* makes clear that claims involving information-gathering tools and assessment-related procedures do not fall within § 7433's limited waiver of sovereign immunity. *See Hudson Valley*, 409 F.3d at 112–13. Because Form 9297 does not itself initiate a levy or other direct enforcement mechanism, it does not satisfy the statutory requirement of being an act "in connection with any collection of Federal tax" within the meaning of § 7433(a). Nor does the issuance of the form violate § 6330(e)(1), which suspends only levy actions—not

15

general collection activity—during the CDP hearing process. As the form merely requests information and does not effectuate a levy, it does not fall within the scope of that suspension. Accordingly, Bowen's allegations regarding Goetz's alleged misuse of Form 9297 do not support a claim under § 7433.

### Direct Communications with Bowen's Attorney-in-Fact

On similar grounds, Bowen challenges Goetz's multiple phone calls to Bluestein, Bowen's agent, and Goetz's leaving a voicemail in regards to the faxed IRS Form 9297 and the pending CDP appeal. Pl.'s Rule 56 Stmt. ¶ 7. Bowen appears to argue that such activity is disallowed under both 26 USC § 6304(b) and 26 USC § 6330(e)(1) in that its natural consequence was to harass, and occurred during the CDP suspension period, respectively.

It is unnecessary to consider why Bowen considers phone calls to his attorney-in-fact harassment or inappropriate "levy actions," since such communications clearly fall outside the scope of collection actions and are thus not actionable under § 7433 even if they violates the Internal Revenue Code. If Form 9297 is considered an assessment activity rather than collection, then calling a taxpayer's agent to let him know that the form was faxed over certainly cannot fall within the scope of collection for the purposes of § 7433.

### Direct Communications with Bowen

Lastly, Bowen highlights communications by Goetz directly with Bowen himself outside the IOA procedures during the pendency of the CDP hearing. Specifically, Bowen alleges that Goetz, during a phone call on October 9, 2020, misrepresented his authority regarding the CDP appeal, demanded additional financial documentation, and accused Bowen of submitting false documentation and perjury. Am. Compl. ¶¶ 44–46; Pl.'s Rule 56 Stmt. ¶ 9. Bowen is right to point to this as a violation of IRC § 6304(a), which

16

"limits communication with the taxpayer… if the Secretary knows the taxpayer is represented by any person authorized to practice before the Internal Revenue Service with respect to such unpaid tax and has knowledge of, or can readily ascertain, such person's name and address, unless such person fails to respond within a reasonable period of time to a communication from the Secretary or unless such person consents to direct communication with the taxpayer."

26 U.S.C. § 6304(a). However, even if this direct communication with Bowen constitutes a violation of the IRC and even if Goetz did so "recklessly or intentionally, or by reason of negligence," such conduct is still only actionable under § 7433 if it occurred "in connection with any collection of Federal tax." 26 U.S.C. § 7433(a). Again, the critical statutory requirement under § 7433(a) is that actions must affirmatively target taxpayer assets for seizure or immediate enforcement. Direct phone calls or demands for information—no matter how aggressively delivered—do not themselves constitute levies, liens, garnishments, or other coercive asset-seizing actions.

Indeed, these calls—though perhaps administratively improper or ethically problematic—remain clearly within administrative investigation or assessment phases of IRS procedures, as distinct from asset seizure or forced enforcement. This is consistent with the statutory distinction that investigatory, assessment-related, or even harassing procedural communications remain outside the limited statutory waiver under § 7433 absent concrete steps to seize or secure taxpayer assets directly. Consequently, Bowen's allegations regarding Goetz's calls, regardless of their alleged harassing nature or improper content, remain administrative or investigative. They do not cross into actionable collection activity under § 7433.

## CONCLUSION

In sum, none of the actions Bowen alleges—information and document demands through communications including Form 9297, internal CIS entries, or administrative communications with Bowen and his agent—constitute prohibited "collection" activities under § 7433(a). Bowen himself

17

acknowledges that the IRS neither levied nor seized his property, garnished his wages, nor filed new notices of lien during the two-year actionable period. Rather, each alleged improper act by Goetz involved administrative or investigative steps, distinct from active asset-seizing collection. Such activities simply cannot trigger the statute's limited waiver of sovereign immunity.

For the reasons set forth above, Bowen's allegations do not fall within the ambit of 26 U.S.C. § 7433's waiver of sovereign immunity. Because the United States may only be sued to the extent it has clearly consented to suit, *see Buczek v. United States*, No. 15-CV-273S, 2018 U.S. Dist. LEXIS 77471, 2018 WL 2119587, at *3 (W.D.N.Y. May 8, 2018) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)), the Court lacks subject matter jurisdiction. Because a court that lacks subject matter jurisdiction is without power to adjudicate the merits, a dismissal on that ground must be without prejudice. *See Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice"). Accordingly, the case must be dismissed without prejudice.

SO ORDERED.

Dated: Rochester, New York
July 22, 2025

ENTER:

_____
CHARLES J. SIRAGUSA
United States District Judge